***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence modifies and affirms the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner and in a Pre-Trial Agreement as:
 STIPULATIONS
1. The parties are bound by and subject to the North Carolina Workers' Compensation Act.
2. At all relevant times, an employment relationship existed between plaintiff and defendant-employer.
3. RSKCO and/or AIG Claims Services are the carriers on risk for the periods involved in this case.
4. Plaintiff's compensation rate is $449.52 per week.
5. Plaintiff suffered a compensable injury by accident on 18 March 1996 arising out of and in the course of his employment with defendant-employer.
6. Plaintiff's medical records were stipulated into evidence as Stipulated Exhibit 1.
 *********** ORDER
Defendants' Motion to Dismiss plaintiff's Form 44 Application for Review and brief is DENIED.
 ***********
Based upon all the competent evidence adduced at the hearing, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 46 years old and had a tenth grade education.
2. Plaintiff had worked for defendant-employer for 10 years as a tractor-trailer truck driver delivering carpet to commercial businesses. Plaintiff was responsible for unloading rolls of carpet which weighed from 64 to 300 pounds. Although equipment was provided for plaintiff to unload the carpet, plaintiff often unloaded some of the carpet himself.
3. On 18 March 1996, plaintiff injured his back and his claim was accepted as compensable by AIG Claims Services on a Form 60 Employer's Admission of Employee's Right to Compensation, Shaw Industries' insurance carrier at that time. At the time of his injury, plaintiff was lifting very large rolls of carpet and felt a pain in his back. An EMG nerve conduction study showed L5-S1 radiculopathy, and a lumbar myelogram and CT scan showed a left L5-S1 herniated nucleus pulposus with nerve root compression. Dr. Charles E. Rawlings performed a partial hemilaminectomy and diskectomy. Pursuant to the Form 60, plaintiff received temporary total disability benefits for the time he missed from work as a result of this injury in March. On 9 December 1996, plaintiff was released from Dr. Rawlings care and was subsequently assigned a 10% permanent partial impairment rating. Defendant AIG Claims Services did not pay plaintiff for the permanent partial impairment rating to his back until June 1999.
4. At the time plaintiff was released by Dr. Rawlings, plaintiff continued to experience lower back pain. Plaintiff indicated to Dr. Rawlings his need for continued care. On 10 January 1997, Dr. Rawlings referred plaintiff to chiropractic care in order to deal with his recurrent pain. Plaintiff's pain medications failed to provide relief or a cure. Dr. Rawlings believed chiropractic care would be beneficial.
5. Plaintiff began chiropractor treatment with Rick M. Erickson, D.C., on 23 January 1997 and plaintiff continued to treat with him through 2 April 1998. Defendant AIG Claims Services paid for 30 of these visits. Dr. Erickson treated plaintiff for complaints of low back pain at the lumbosacral spine and left sacroiliac joint radiating into the left leg toward the foot, with numbness in his left foot. Plaintiff's symptoms improved with treatment but he experienced occasional flare-ups or exacerbations of pain.
6. On or about 27 August 1998, plaintiff was standing on a dock making a delivery when he raised his right hand over his head to point a roll of carpet so that a forklift operator could pick up the appropriate roll. Plaintiff felt a snap and a sharp pain in his lower back.
7. Plaintiff returned to Dr. Erickson on 28 August 1998 and reported that he had a "reoccurrence of the same problem" in his low back and left leg for which he had been previously treated. He did not give a history of experiencing sharp low back pain when lifting his right hand over his head at work.
8. Dr. Erickson was of the opinion that plaintiff did not sustain a new injury to his back on 27 August 1998, but this minor movement exacerbated his pre-existing weakness or instability and was no different from other flare-ups plaintiff had experienced during the period he treated plaintiff. He further opined that plaintiff's condition on 28 August 1998 was a natural sequela of what had been developing since plaintiff's prior back injury on 18 March 1996.
9. On 4 November 1998, Dr. Erickson wrote plaintiff out of work beginning on 27 August 1998 and continuing until plaintiff was evaluated by a neurosurgeon or orthopaedic surgeon for his condition.
10. Plaintiff was evaluated by Dr. Walter Davis at the rehabilitation department of Wake Forest University Baptist Medical Center on 30 October 1998. At that time, he complained of chronic lower back pain with numbness down the left lower extremity. Dr. Davis assessed chronic myofascial pain with no evidence of neurological impairment. He recommended a functionally oriented rehabilitation program and an "acute quantitative interdisciplinary evaluation" to decide if plaintiff needed work conditioning or a functional restoration program. Although defendant AIG Claims Services arranged this evaluation of plaintiff, there is no evidence that AIG Claims Services complied with Dr. Davis' recommendations for plaintiff.
11. Plaintiff was not able to see an orthopaedic or neurosurgeon until 8 October 1999. At that time, AIG Claims Services arranged for Mark Yates, M.D., an orthopaedic surgeon, to evaluate plaintiff. Dr. Yates saw plaintiff one time and diagnosed him with a possible back sprain as result of the 27 August 1998 incident.
12. Based on plaintiff's history of the incident causing the onset of pain on 27 August 1998, Dr. Yates was not able to answer the question of whether plaintiff sustained an actual injury on that date.
13. Dr. Yates was asked whether he clinically saw symptoms of an injury other than what he would normally see in a patient who was post-operative L-5, S-1 laminectomy and diskectomy based upon his physical exam of plaintiff on 8 October 1999. Dr. Yates responded as follows: "The patient had no evidence, on physical exam, of nerve root compressions. Now, that is, his muscles were working well, his reflexes worked well. He did have some tenderness of his back on palpation, but his neurologic exam was normal."
14. However, Dr. Yates thereafter opined that plaintiff may have sprained his back on 27 August 1998, based on plaintiff's history and exam. This opinion appears inconsistent, in part, with his prior opinion testimony.
15. Dr. Yates cleared up some of the confusion in his opinion testimony when he agreed that based on plaintiff's physical exam on 8 October 1999, he was of the opinion that plaintiff could have been complaining of any of the following three things: (1) something residual from the surgery; (2) the natural progression of degenerative disk disease of the spine; or (3) residual from a sprain or strain that may have happened on 27 August 1998.
16. Dr. Yates further opined that at the time he saw plaintiff, plaintiff could not return to his previous job duties, but there might be a possibility that he could resume that type of activity if he went to physical therapy and then gradually resumed a work activity structure. There is no evidence that defendants have provided to plaintiff the physical therapy recommended by Dr. Yates.
17. The Industrial Commission gives greater weight to the opinion testimony of Dr. Erickson and finds that plaintiff's 27 August 1998 incident resulted from a recurrence or natural sequela of his 18 March 1996 injury and was not a new injury. Dr. Erickson treated plaintiff over a long period of time and had an opportunity to observe how plaintiff's condition waxed and waned over time. Also, Dr. Erickson's opinion is not inconsistent with Dr. Yates' opinion as set forth in finding no. 14 above.
18. On 27 August 1998, plaintiff sustained total disablement due to causes and conditions which flowed directly from and were a natural consequence of his 18 March 1996 admittedly compensable injury. At the time of said disablement, defendant AIG Claims Services had not paid plaintiff for all of the compensable consequences of the 18 March 1996 injury. Therefore, plaintiff is entitled to temporary total disability compensation to be paid by AIG Claims Services from 27 August 1998 and continuing until further order of the Commission.
19. Plaintiff has not reached maximum medical improvement from his new period of disablement.
20. Defendants' payment of plaintiff's permanent partial disability rating in June 1999 does not constitute a double recovery barring plaintiff from receiving temporary total disability compensation for the 30 weeks following payment of that award. The compensation paid pursuant to plaintiff's 10% rating became due and payable on or about 19 December 1996 when plaintiff reached the end of his healing period and was rated by Dr. Rawlings. Plaintiff received no other disability compensation during the subsequent 30 weeks.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. On 18 March 1996, plaintiff sustained a compensable injury by accident to his back arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. As result of his compensable injury by accident on 18 March 1996, plaintiff received compensation at a rate of $449.53 per week pursuant to a Form 60 Employer's Admission of Employee's Right to Compensation, which continued until plaintiff returned to work. N.C. Gen. Stat. §97-18(b).
3. Plaintiff received treatment by Charles E. Rawlings, III, M.D., as result of his compensable injury by accident on 18 March 1996. Plaintiff was referred by Dr. Rawlings to Rick M. Erickson, M.D., for treatment of plaintiff's pain as result of plaintiff's injury by accident. N.C. Gen. Stat. § 97-25.
4. Plaintiff entered into a Form 21 Agreement with defendant for payment of a 10% permanent partial disability for his back on 1 June 1999. North Carolina Industrial Commission subsequently approved this agreement on 19 August 1999. N.C. Gen. Stat. § 97-31.
5. On 27 August 1998, plaintiff continued to experience back pain as result of compensable injury by accident while working for defendant-employer. This was a natural progression of plaintiff's symptoms relating to his compensable injury by accident on 18 March 1996. AIG Claims Services is the carrier on risk for the continuation of the compensable injury by accident. N.C. Gen. Stat. § 97-2.
6. Plaintiff is entitled to disability compensation at a rate of $449.52 per week for the period of 28 August 1998 and continuing until further order of the Commission. Plaintiff has not reached maximum medical improvement from 27 August 1998 injury by accident, and he remains unable to return to his previous job duties. N.C. Gen. Stat. § 97-29.
7. Plaintiff is entitled to payment by defendants for the medical care provided by Rick M. Erickson, D.C., and Mark Yates, M.D., as well as for any medical treatment incurred in the future which is related to his compensable injury. N.C. Gen. Stat. § 97-25.
8. Defendants' payment of plaintiff's permanent partial disability rating in June 1999 does not constitute a double recovery barring plaintiff from receiving temporary total disability compensation for the 30 weeks following payment of that award. The compensation paid pursuant to plaintiff's 10% rating became due and payable on or about 19 December 1996 when plaintiff reached the end of his healing period and was rated by Dr. Rawlings. Plaintiff received no other disability compensation during the subsequent 30 weeks. N.C. Gen. Stat. § 97-31.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. For his total disability, AIG Claims Services shall pay plaintiff total disability compensation from 28 August 1998 continuing until further order of the Commission. Accrued amounts shall be paid in a lump sum, subject to an attorney's fee approved in Paragraph 3.
2. Defendant AIG Claims Services shall pay all medical expenses which were incurred and which may be incurred in the future as continuing care for plaintiff's compensable injury by accident on 18 March 1996.
3. A reasonable attorney's fee of 25% of compensation due plaintiff under Paragraph 1 of this AWARD is approved for plaintiff's counsel and shall be paid as follows: 25% of lump sum due plaintiff under Paragraph 1 of this AWARD shall be deducted from that sum and paid directly to plaintiff's counsel. Thereafter, every fourth weekly payment of compensation shall be paid by defendants directly to plaintiff's counsel.
4. Defendant AIG Claims Services shall pay the costs.
5. Defendant-Carrier RISKO is hereby dismissed as a party to this claim.
This the _____ day of January, 2002.
 S/_____________________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/_____________________________ DIANNE C. SELLERS COMMISSIONER
S/_____________________________ CHRISTOPHER SCOTT COMMISSIONER